UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
DOCKET NO. 3:19-cv-00157-GCM-DCK

| | |
|---|---|
| RED APPLE DEVELOPMENT, LLC, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>RUFUS ROAD PARTNERS, LLC, )<br>)<br>Defendant. )<br>)<br>) | ORDER |

THIS MATTER is before the Court on Defendant's Motion for Judgment as a Matter of Law pursuant to Rule 50(b) of the Federal Rules of Civil Procedure. (Doc. No. 68). This motion has been fully briefed by the parties and is ripe for disposition by the Court. For the reasons that follow, the Court DENIES the motion.

I. Background

Plaintiff filed the instant suit alleging Defendant breached the terms in the parties' Agreement for Purchase and Sale ("Agreement"), which was a land purchase contract between the parties. This case was tried before a jury, who returned a verdict in favor of Plaintiff finding Defendant breached the Agreement by failing to close on the transaction and therefore owed Plaintiff $200,000 in damages. Defendant now seeks judgment as a matter of law and argues the jury lacked a legally sufficient evidentiary basis to find a breach because Plaintiff failed to comply with the condition precedent required by the Agreement.

During trial, the parties stipulated to several facts. On September 10, 2018, the parties entered into the Agreement, wherein Defendant agreed to sell to Plaintiff a parcel of real property

1

located in Lincoln County, North Carolina, for a purchase price of $1,133,000. September 10, 2018, also served as the Agreement's "Effective Date" and start of the 90-day "Due Diligence Period," as those terms are defined in the Agreement. In terms of setting forth the parties' obligations, the Agreement provides in relevant part:

> 2. Time for Acceptance and Effective Date. The "Effective Date" of this Agreement shall be the date on which the last of the Seller and Buyer has executed this Agreement and each executing party on the day of execution sends the other party an electronic copy of the executed and witnessed signature page. The "Closing Date" (as defined by Paragraph 8 of this Agreement), shall be the time at which all terms of this Agreement are considered fully performed or waived, if applicable, as they pertain to the Property, subject to any of the terms which are intended to survive the Closing hereof. The use of the terms "Closing" and "Closing Date" when used in this Agreement can be used interchangeably, and each use of those terms shall be construed to address the Closing and/or the Closing Date, as appropriate.
>
> . . . .
>
> 4. Purchase Price and Terms of Payment.
>
> (i) The purchase price of the Property (the "Purchase Price")is One Million One Hundred Thirty-Three Thousand and 00/100 Dollars ($1,133,000.00).
>
> (ii) Within five (5) days of the Effective Date, Buyer shall deposit the sum of Fifty Thousand and 00/1 00 Dollars ($50,000.00) (hereinafter "Initial Deposit")with Tripp Scott, P.A._("Escrow Agent").The Initial Deposit shall be remitted to the Escrow Agent by cashier's check (subject to clearance) or wire transfer of immediately available federal funds. The Initial Deposit shall be held by the Escrow Agent in an interest-bearing escrow account. Should Buyer deliver timely notice of its intention to terminate the Agreement, Seller agrees Initial Deposit shall be immediately returned to Buyer and the Agreement shall be terminated. The Additional Deposit shall immediately be nonrefundable, except in the event of a Seller default. The Initial Deposit and Additional Deposit (if paid) shall be applied to the Purchase Price at closing.
>
> (iii) In the event Buyer does not terminate this Agreement during the Due Diligence Period, as hereinafter defined, Buyer shall, no later than three (3) days after the expiration of the Due Diligence Period, deliver wired funds to the Escrow Agent in the amount of Two Hundred Thousand and 00/100 Dollars ($200,000) (the "Additional Deposit"), which, when deposited, shall be referred, collectively

with the Initial Deposit, as the "Deposit"). The timely delivery of the Additional Deposit is a condition precedent to Seller's obligations under this Agreement. If Buyer fails to timely deliver the Additional Deposit as provided herein, Seller may terminate this Agreement by giving Buyer notice of termination at any time prior to payment of the Additional Deposit and the Escrow Agent shall immediately deliver the Initial Deposit to Buyer and thereafter neither party will have any further rights or obligations under this Agreement except as set forth to the contrary in this Agreement.

(iv) At the Closing, Buyer shall pay the balance of the Purchase Price in excess of the Deposit to the Seller for the Property, subject to prorations and adjustments stated elsewhere in this Agreement, by wire transfer of immediately available federal funds made available to Seller at or prior to closing.

. . . .

10. Place of Closing. Closing shall be by mail or overnight delivery of Closing Documents to the Escrow Agent with a wire transfer of the Purchase Price, subject to adjustment as set forth in Section 4.

11. Closing Date. The consummation of this transaction ("Closing") the earlier of 1) ten (10) days after Buyer provides Seller written notice of its intent to close, or 2) thirty (30) days after the expiration of the Due Diligence Period.

. . . .
20. Default.

(i) In the event of a failure by Buyer or Seller to perform any obligation or covenant which either of them is obligated to perform under this Agreement, except for the failure to close in accordance with the terms of this Agreement, which failure shall constitute an immediate default hereunder, no default shall occur until notice thereof is given to the defaulting party by the other party hereto asserting an event of default has occurred, describing the nature of the default, and giving a period of five (5) days to cure the default, if readily curable by the payment of money, or a period of twenty (20) days to cure the default, if not readily curable by the payment of money. If after notice and the cure period provided in the preceding sentence, Buyer is in default, then the Deposit shall be paid to and retained by and for the account of Seller, with any interest accrued, as agreed and liquidated damages and in full settlement of any claims whatsoever, and this Agreement shall terminate and be of no further force or effect. If Seller fails to perform any of its covenants set forth in this Agreement or fails to properly convey the Property when obligated to do so in accordance with the terms hereof, Buyer shall be entitled to (i) seek specific performance of this Agreement which the parties acknowledge is an appropriate

3

remedy and may be granted by a Court of competent jurisdiction, or, at Buyer's option, to receive the return of the Deposit, with any interest accrued.

(ii) In the event that litigation ensues as to the parties' rights and obligations under this Agreement or in the enforcement of this Agreement, the prevailing party shall be entitled to recover from the non-prevailing party all reasonable costs and attorney's fees at the trial level and all levels of appeal.

(Doc. No. 2, pp. 1, 2, 5, 11; Plaintiff's Trial Ex. 1).[1]

The parties do not dispute that Plaintiff delivered the Initial Deposit to the Escrow Agent within five days of the Effective Date. In November 2018, prior to the expiration of the Due Diligence Period and prior to the Additional Deposit being due under the Agreement, Defendant inquired as to whether the Escrow Agent was holding both the Initial Deposit and the Additional Deposit. The Escrow Agent responded it held only the $50,000 Initial Deposit. On December 6, 2018, the Escrow Agent sent a letter to Defendant stating that Plaintiff intended to close on the transaction on December 16, 2018, which was a Sunday. In the interim, the Due Diligence Period ended on December 10, 2018. The parties stipulated Plaintiff did not terminate the Agreement during the Due Diligence Period. No evidence at trial indicated Plaintiff provided the Escrow Agent with the Additional Deposit within three days after the Due Diligence Period ended. The parties stipulated, however, that Plaintiff was ready, willing, and able to close the transaction on December 16, 2018, and on the next business day, December 17, 2018. The parties did not close the transaction on either of those two dates.

On January 16, 2019, Defendant sent a letter to Plaintiff indicating Defendant was terminating the Agreement because Defendant "had not received confirmation that the Additional

---

[1] Plaintiff provided a copy of the Agreement as an Exhibit to the Complaint and admitted it as evidence at trial. The Court hereinafter refers to specific provisions in the Agreement by paragraph and/or section number for ease of reference.

Deposit was timely made." (Plaintiff's Trial Ex. 11, p. 1). The parties stipulated that on that same day—January 16, 2019—Defendant "did not know with certainty" whether Plaintiff had delivered the Additional Deposit to the Escrow Agent. On January 18, 2019, Plaintiff wired the Additional Deposit to the Escrow Agent, informed Defendant of doing so, and indicated to Defendant that it contested Defendant's termination of the Agreement. The parties stipulated that on January 28, 2019, Plaintiff was ready, willing, and able to close the transaction. The parties did not close the transaction, and this suit followed.

During trial, Plaintiff presented evidence and argued Defendant breached the Agreement by failing to close on the transaction in December 2018 and again in January 2019, after Plaintiff received notice of and cured its failure to make the Additional Deposit. Defendant also presented evidence and argued it was not required to close in December 2018 because the Additional Deposit had not been made within three days of the expiration of the Due Diligence Period and it was not required to close in January 2019 because the Agreement's terms allowed Defendant to terminate the Agreement prior to Plaintiff making the Additional Deposit. The jury sided with Plaintiff, finding that Defendant breached the Agreement by failing to close and awarding Plaintiff damages in the amount of $200,000. (Doc. No. 65). Defendant contends it is entitled to judgment as a matter of law on Plaintiff's sole claim for breach of contract.

## II. Standard of Review

Judgment as a matter of law is appropriate where "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on the issue." Fed. R. Civ. P. 50(a). Pursuant to Rule 50(a) of the Federal Rules of Civil Procedure, a party may move for judgment as a matter of law before the case is submitted to the jury. If the court denies the motion made under

Rule 50(a), Rule 50(b) allows the party to renew its motion for judgment as a matter of law after a jury verdict has been returned. Belk, Inc. v. Meyer Corp., 679 F.3d 146, 156 (4th Cir. 2012). "When a jury verdict has been returned, judgment as a matter of law may be granted only if, viewing the evidence in a light most favorable to the non-moving party (and in support of the jury's verdict) and drawing every legitimate inference in that party's favor, the only conclusion a reasonable jury could have reached is one in favor of the moving party." Drummond Coal Sales, Inc. v. Norfolk S. Ry. Co., 3 F.4th 605, 610 (4th Cir. 2021) (quoting Int'l Ground Transp. v. Mayor & City Council of Ocean City, MD, 475 F.3d 214, 218–19 (4th Cir. 2007)). A renewed motion for judgment as a matter of law is properly granted "if the nonmoving party failed to make a showing on an essential element of his case with respect to which he had the burden of proof." Wheatley v. Wicomico Cnty., Md., 390 F.3d 328, 332 (4th Cir. 2004) (citing Singer v. Dungan, 45 F.3d 823, 827 (4th Cir. 1995)).

Turning to the law applicable to the breach of contract claim at issue here, North Carolina law undisputedly governs. See Republic Indus., Inc. v. Atl. Veneer Corp., 166 F.3d 1210 (4th Cir. 1999) ("In North Carolina, as in most other states, parties to a contract may agree in advance as to the choice of law that will govern any disputes that arise between them." (collecting cases)). In North Carolina, "[t]he elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract." Poor v. Hill, 530 S.E.2d 838, 843 (N.C. Ct. App. 2000); see also Wells Fargo Ins. Servs. USA, Inc. v. Link, 827 S.E.2d 458, 472 (N.C. 2019) (per curiam). If either party to a bilateral contract commits a material breach of the contract, "the non-breaching party is excused from the obligation to perform further." McClure Lumber Co. v. Helmsman Const., Inc., 585 S.E.2d 234, 239 (N.C. Ct. App. 2003). A material breach is one

6

"going to the very heart of the instrument[.]" Wilson v. Wilson, 134 S.E.2d 240, 242 (N.C. 1964). "Whether a breach is material or immaterial is ordinarily a question of fact." McClure Lumber Co., 585 S.E.2d at 239.

Additionally, under North Carolina law, it is well settled that a party to any agreement "is required to act in good faith and to make reasonable efforts to perform his obligations under the agreement." Maglione v. Aegis Family Health Centers, 607 S.E.2d 286, 291 (N.C. Ct. App. 2005) (citation and internal quotation marks omitted). "This obligation means 'neither party will do anything to injure or destroy the right of the other party to receive the benefits of the agreement. Violation of the duty of good faith and fair dealing constitutes a breach of contract.'" Drummond Coal Sales, Inc., 3 F.4th at 611 (quoting 23 WILLISTON ON CONTRACTS § 63:22 (4th ed. 2021) (footnotes omitted)).

Bearing these principles in mind, the Court turns to Defendant's arguments in support of its motion. To prevail, Defendant must show that there could be no breach of the Agreement under *any* reasonable theory. Drummond Coal Sales, Inc., 3 F.4th at 610–11 (citing Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc., 99 F.3d 587, 599 (4th Cir. 1996) ("An appeals court is abjured to determine whether a jury verdict can be sustained, on any reasonable theory." (internal quotation marks omitted)).

### III. Analysis

The crux of this case concerns whether Defendant breached a material term of the Agreement by failing to close in December 2018 and/or in January 2019. Defendant contends it is entitled to judgment as a matter of law because Plaintiff did not: 1) fulfill the Additional Deposit condition precedent, thereby relieving Defendant of any obligation under the Agreement, including

7

the obligation to close the transaction; or 2) pay the Additional Deposit before Defendant provided notice of termination of the Agreement, which also relieved Defendant of the obligation to close in January 2019. The parties seem to agree in part on the first argument: Plaintiff failed to pay the Additional Deposit prior to December 13, 2018; however, the parties dispute whether this was a "condition precedent" as that term is used in North Carolina contract law and the impact of Plaintiff's failure to satisfy that "condition precedent" as it relates to Defendant's failure to close. As to the second argument, the parties dispute whether Plaintiff's failure to pay the Additional Deposit before Defendant provided notice of termination of the Agreement in January 2019 was subject to the notice and cure provision, which—if inapplicable—would relieve Defendant of any obligation to close in January 2019. The Court addresses each in turn.

A.     Impact of the "Condition Precedent"

Under North Carolina law, "A condition precedent is an event *which must occur before a contractual right arises* . . . [B]reach or non-occurrence of a condition prevents the promisee from acquiring a right . . . but subjects him to no liability." Carson v. Grassmann, 642 S.E.2d 537, 539 (N.C. Ct. App. 2007) (emphasis added); see also Powell v. City of Newton, 703 S.E.2d 723, 727 (N.C. 2010) ("A condition precedent is an event which must occur before a contractual right arises . . . ."); Farmers Bank, Pilot Mountain v. Michael T. Brown Distribs., Inc., 298 S.E.2d 357, 362 (N.C. 1983). "A condition precedent foreshadows contractual rights. Terms of a condition precedent often contain words such as 'when, after, as soon as and the like [which] give clear indication that a promise is not to be performed except upon the happening of the stated event.' In other words, a contract does not become enforceable until such condition is satisfied." In re Kirkbride, 409 B.R. 354, 357 (Bankr. E.D.N.C. 2009) (quoting Williams v. P.S. Investment Co.,

8

Inc., 401 S.E.2d 79 (1991)). "If negotiating parties impose a condition precedent on the effectiveness of their agreement, *no contract is formed until the condition is met*." Parker v. Glosson, 641 S.E.2d 735, 737 (N.C. Ct. App. 2007) (emphasis added); see also TSC Rsch., LLC v. Bayer Chemicals Corp., 552 F. Supp. 2d 534, 539 (M.D.N.C. 2008) ("Agreements containing an unmet condition precedent are also unenforceable." (citing Parker)); Mosely v. WAM, Inc., 606 S.E.2d 140, 144 (N.C. Ct. App. 2004) ("A condition precedent is a fact or event that must exist or occur before there is a right to immediate performance, before there is a breach of contract duty." (citing Cox v. Funk, 255 S.E.2d 600, 601 (N.C. Ct. App. 1979)). North Carolina law also provides, "Conditions precedent are not favored by the law. Thus, the provisions of a contract will not be construed as conditions precedent in the absence of language clearly requiring such construction." Mosely, 606 S.E.2d at 144 (citing Craftique, Inc. v. Stevens & Co., Inc., 364 S.E.2d 129, 131 (N.C. 1988); In re Foreclosure of Goforth Props., Inc., 432 S.E.2d 855, 859 (N.C. 1993)).

Here, the Agreement includes the magic "condition precedent" language, but when considered with the entirety of Section 4(iii), the use of this term is not dispositive. The second sentence of Section 4(iii) explicitly states: "The timely delivery of the Additional Deposit is a *condition precedent* to [Defendant's] obligations under this Agreement." (Emphasis added). Under the terms of the Agreement, "timely delivery" required Plaintiff to make the Additional Deposit three days after expiration of the Due Diligence Date, which the parties stipulated to be December 10, 2018.[2] The evidence showed Plaintiff did not provide the Additional Deposit on December 13, 2018, instead depositing it with the Escrow Agent January 18, 2019, two days after receiving a letter from Defendant providing notice of Defendant's termination of the Agreement.

---

[2] At trial, Plaintiff moved to withdraw this stipulation, and the Court denied that motion.

9

Defendant contends the Agreement's "condition precedent" language "unequivocally" means that Defendant "had no obligation to close the Agreement's contemplated transaction" and "no further obligations under the Agreement – including no obligation to give notice to cure." (Doc. No. 81, pp. 1, 2, 17). Importantly, however, the same paragraph provides, "If [Plaintiff] *fails to timely deliver* the Additional Deposit as provided herein, [Defendant] *may* terminate the Agreement by giving [Plaintiff] notice of termination *at any time prior to payment of the Additional Deposit* and the Escrow Agent shall immediately deliver the Initial Deposit to Buyer and thereafter neither party will have any further rights or obligations under this Agreement *except as set forth the contrary in this Agreement*." (Emphasis added).

This third sentence in Section 4(iii) construed alongside the "condition precedent" sentence immediately preceding it makes the plain language of the Agreement, when read as a whole, ambiguous. On one hand, the use of the "condition precedent" term tends to show the parties intended the timely Additional Deposit to be required prior to Defendant having any obligations under the Agreement. As Defendant contends, "No obligation means 'no obligation.'" (Doc. No. 69, p. 17). In other words, without the occurrence of the event—timely delivery of the Additional Deposit—Defendant argues it had *no* obligation whatsoever under the Agreement. The ambiguity, however, comes with the sentence that follows, which explains Plaintiff's and Defendant's obligations if the event—timely delivery of the Additional Deposit—does not occur. This sentence suggests that untimely delivery did not per se render Defendant to be obligation-free. Indeed, a plain reading of this sentence contemplates that Plaintiff *could* make an untimely delivery of the Additional Deposit and Defendant would have *all* obligations under the Agreement. This stands

10

in stark contrast to Defendant's interpretation above that Plaintiff's failure to "timely deliver" the Additional Deposit means Defendant has no obligation whatsoever.

Given the inconsistencies within this section of the Agreement, there is evidence in the trial record to support both parties' constructions of this ambiguous provision. Where an agreement is ambiguous, interpretation of the contract is a matter for the jury. Dockery v. Quality Plastic Custom Molding, Inc., 547 S.E.2d 850, 852 (N.C. Ct. App. 2001) (citing Dept. of Transportation v. Idol, 440 S.E.2d 863, 864 (N.C. Ct. App. 1994)); see also Simmons v. Waddell, 775 S.E.2d 661, 671 (N.C. Ct. App. 2015). In Dockery, the North Carolina Court of Appeals explained:

> Ambiguity exists where the contract's language is reasonably susceptible to either of the interpretations asserted by the parties. Glover v. First Union National Bank, 428 S.E.2d 206, 209 (N.C. Ct. App. 1993). "The fact that a dispute has arisen as to the parties' interpretation of the contract is some indication that the language of the contract is, at best, ambiguous." St. Paul Fire & Marine Ins. Co. v. Freeman–White Assoc., Inc., 366 S.E.2d 480, 484 (N.C. 1988).

547 S.E.2d at 852. Ambiguity exists in a contract's terms "when either the meaning of words or the effect of provisions is uncertain or capable of several reasonable interpretations." Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC, 723 S.E.2d 744, 748 (N.C. 2012). "Stated differently, a contract is ambiguous when the writing leaves it uncertain as to what the agreement was." Salvaggio v. New Breed Transfer Corp., 564 S.E.2d 641, 643 (N.C. Ct. App. 2002) (internal citation and quotation marks omitted). It is well-settled North Carolina law that "a contract term or phrase is ambiguous if it is susceptible to two different interpretations. In other words, for a term to be ambiguous, it must be 'in the opinion of the court . . . fairly and reasonably susceptible to either of the constructions for which the parties contend.'" Foodbuy, LLC v. Gregory Packaging, Inc., 987 F.3d 102, 119 (4th Cir. 2021) (citing Woods v. Nationwide Mut. Ins. Co., 246 S.E.2d 773, 777 (N.C. 1978); quoting Wachovia Bank & Tr. Co. v. Westchester Fire Ins.

11

Co., 172 S.E.2d 518, 522 (N.C. 1970); cf. Walton v. City of Raleigh, 467 S.E.2d 410, 412 (N.C. 1996) ("Parties can differ as to the interpretation of language without its being ambiguous[.]")).

In order to resolve the ambiguity as to what effect the parties intended the timely payment of the Additional Deposit to have on the parties' obligations, the jury had to reconcile the Agreement's sentence that provides "*timely* delivery . . . is a condition precedent" with the contrasting language in the next sentence explaining obligations for *untimely* delivery. The jury could give full meaning to the "condition precedent" sentence in the Agreement's Section 4(iii) and conclude Defendant had *no* obligations under the Agreement *unless* the Additional Deposit was made during the three-day time period. Alternatively, the jury could resolve the ambiguity to contradict what Defendant contends was the intent of the parties and instead conclude failure to make timely payment of the Additional Deposit meant the parties still had obligations under the Agreement.

Based on the terms of the Agreement and evidence at trial, the jury could reasonably resolve the ambiguity in Plaintiff's favor. If the parties intended for delivery of the Additional Deposit—either timely or untimely—to be a condition precedent, they could have omitted the "timely" language in the sentence setting forth the condition. Alternatively, the parties could have kept "timely" and deleted the entire sentence that followed it. These two sentences make ambiguous what is typically unambiguous under North Carolina law, and the jury—in evaluating the parties' intent—could have reasonably concluded the parties' intended the "condition precedent" of "timely delivery" to not be required to trigger Defendant's obligations under the Agreement.

12

Furthermore, evidence at trial showed the parties continued to engage in discussions regarding the property and the Agreement even after the deadline for "timely" making the Additional Deposit. During this time period, Defendant did not inquire as to whether the Additional Deposit had been made, despite the fact Defendant had asked this question to the Escrow Agent prior to the deadline for doing so. Defendant conceded that at the time it provided notice of termination, it "did not know with certainty" whether the Additional Deposit had been made. This conduct also supports the reasonable conclusion that the parties did not intend "timely delivery" of the Additional Deposit to void all of Defendant's obligations in the Agreement.

Having concluded the jury could reasonably conclude the parties had obligations under the Agreement notwithstanding Plaintiff's failure to timely make the Additional Deposit, the issue turns to whether the evidence supported a finding by the jury that Defendant breached the Agreement by failing to close. The parties stipulated that Plaintiff provided written notice of intent to close on December 16, 2018, and that Plaintiff was ready, willing, and able to close on that date—a Sunday—and on the next business day. Defendant did not provide notice of termination of the Agreement pursuant to Plaintiff's failure to make a timely—or untimely—Additional Deposit prior to the December closing date. Defendant did not close the transaction in December. Accordingly, because evidence supports a conclusion that the parties did not intend the condition precedent to be satisfied for any party to enforce the Agreement, and it is stipulated that no closing occurred in December despite Plaintiff providing notice and being ready, willing, and able, the jury could have reasonably concluded a breach of contract occurred by Defendant's failure to close in 2018. The Agreement expressly provides that "failure to close . . . shall constitute an immediate default . . . ." Accordingly, the jury's verdict must be upheld.

13

B.  Impact of the "Default" Provision and Opportunity to Cure

Plaintiff contends that as an alternative basis to find Defendant breached the Agreement by failing to close, the jury could have also found the parties intended for the Agreement's Default section in paragraph 20(i)—and specifically the "notice and cure" provision contained within that paragraph—to apply to Plaintiff's failure to deliver the Additional Deposit after the due date for timely delivery occurred.  The Default section provides, in relevant part, "In the event of a failure by [Plaintiff] or [Defendant] to perform any obligation or covenant which either of them is obligated to perform under this Agreement . . . no default shall occur until notice thereof is given to the defaulting party . . . and giving a period of five (5) days to cure the default, if readily curable by money."  Here, it is undisputed that Defendant provided notice of termination on January 16, 2019, because it had "not received confirmation that the Additional Deposit was *timely* made." (Emphasis added).  This suggests Defendant's basis for termination relied solely on Plaintiff's failure to make the Additional Deposit by December 13, 2018.  It is also undisputed that two days later, on January 18, 2019, Plaintiff provided the Additional Deposit and informed Defendant of the delivery.  The parties stipulate that ten days later, on January 28, 2019, Plaintiff was ready, willing, and able to close the transaction, and the parties did not close the transaction on that date.

Defendant contends no ambiguity exists because the Agreement clearly indicates the notice and cure provision does not apply to any failure to make the Additional Deposit.  Section 4(iii)'s language allows Defendant to provide notice of termination "at any time" before payment of the Additional Deposit.  Defendant also points to the language requiring the Escrow Agent to "immediately deliver the Initial Deposit" to Plaintiff and argues this indicates the instantaneous impact of providing notice of termination for failure to make the Additional Deposit.  The plain

14

language of this section, according to Defendant, conclusively establishes the parties intended for Defendant to be able to terminate the Agreement "at any time" without being subject to an opportunity to cure.

The ambiguity, however, arises when this sentence in Section 4(iii) is considered alongside the Default provision in Section 20(i), which provides for an opportunity to cure "[i]n the event of a failure by [Plaintiff] or [Defendant] to perform *any* obligation or covenant . . . *except* for the failure to close . . . ." (Emphasis added.) The parties' intent as to the applicability of this section to the Additional Deposit requirement is unclear. The parties did not specific exclude the failure to make the Additional Deposit in this provision, yet they specifically included "the failure to close." Moreover, Plaintiff presented testimony at trial tending to show the parties intended for the opportunity to cure provision to apply to *all* obligations, including Plaintiff's obligation to make the Additional Deposit.

Defendant contends the delivery of the Additional Deposit is not an "obligation or covenant" because it was, instead, a "condition precedent." The Court has already explained that the jury could have reasonably interpreted the Agreement to find the timely delivery of the Additional Deposit was *not* intended to be a condition precedent as that term is used in North Carolina law. The Agreement does not require *only* the "timely delivery" of the Additional Deposit but also contemplates the *untimely* delivery as an alternative obligation that Plaintiff, as the buyer, had under the Agreement. Accordingly, the Agreement is ambiguous as to the applicability of the cure provision in Section 20(i) to Plaintiff's default related to its "obligation" in making an untimely delivery of the Additional Deposit.

Here, the jury could have resolved the ambiguity in Plaintiff's favor. The jury could reasonably conclude the parties intended for the cure provision to apply, and the delivery of the Additional Deposit within the five-day cure period after receiving Defendant's notice to have cured any default by Plaintiff under the Agreement. See LCA Dev., LLC v. WMS Mgmt. Grp., LLC, 789 S.E.2d 569, 2016 WL 3406519, at *2 (N.C. Ct. App. June 21, 2016) (unpublished table decision) ("[T]he default could not be a material breach until after [the defendant] was given notice and an opportunity to cure-were it otherwise, the cure provision in the contract would be meaningless."); see also Moses H. Cone Mem'l Hosp. Operating Corp. v. Conifer Physician Servs., Inc., No. 1:13CV651, 2017 WL 1378144, at *4 (M.D.N.C. Apr. 11, 2017) ("North Carolina law generally enforces valid notice and cure clauses in a contract." (collecting cases)). Defendant's subsequent failure to close after Plaintiff made the Additional Deposit would support the jury's verdict that Defendant breached the Agreement. Thus, the jury's verdict that Defendant breached the Agreement by failing to close must be upheld.

## IV. Conclusion

For these reasons, the jury had a legally sufficient basis to reach its verdict that Defendant breached the Agreement by failing to close.

IT IS THEREFORE ORDERED that Defendant's Motion for Judgment as a Matter of Law (Doc. No. 68) is DENIED.

IT IS SO ORDERED.

Signed: February 24, 2022

Graham C. Mullen
United States District Judge